NO. 07-01-0345-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 28, 2002

_____


HARTFORD-LUBBOCK LIMITED PARTNERSHIP II, APPELLANT

V.

THE CATO CORPORATION, APPELLEE


_____

FROM THE 72nd DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-508,598; HONORABLE ROBERT E. MONTGOMERY, JUDGE

_____


Before BOYD, C.J., and QUINN and REAVIS, JJ.

Hartford-Lubbock Limited Partnership II presents two issues challenging a judgment following a jury trial that it take nothing on its action for fixed rentals under a written lease agreement against The Cato Corporation and declaring that Cato may abate payment of fixed rentals as provided by the lease because Mardel Christian Book Store is not a similar type business as Hobby Lobby Craft Supply Store. By its first issue, Hartford contends the

trial court erred in overruling its objection to Cato's questions regarding the prospective jurors' responses to questions on *voir dire*. By its second issue, Hartford contends the evidence is insufficient to support the jury's conclusion that Hobby Lobby and Mardel do not operate a similar type of business. Based upon the rationale expressed herein, we affirm.

By written lease dated October 5, 1993, Hartford leased approximately 6,316 square feet of its shopping center for girls' apparel, accessories, and allied lines. Paragraph 3 of the lease established a fixed rental at Lubbock Shopping Parkade to Cato to be leased at $4,737 per month, and paragraph 4 of the lease required Cato to pay a percentage rent equal to four percent of all gross retail sales based on the formula set out therein. Paragraph 26 of the lease provided:

> 26. INDUCEMENT. As an inducement to LESSEE for entering into this Lease, LESSOR warrants that the following major anchor tenants are open for business, or will open for business prior to or concurrent with LESSEE, located as indicated on Exhibit A hereto as follows:
>
> | STEIN MART DEPARTMENT STORE | 41,922 sq. ft. |
> | HOBBY LOBBY CRAFT SUPPLY STORE | 40,000 sq. ft. |
> | T.J. MAXX DISCOUNT APPAREL STORE | 24,080 sq. ft. |
>
> LESSOR warrants that in the event any one of said tenants should not be open for business when LESSEE is scheduled to open for business, or should thereafter vacate its premises or cease its operations in the Shopping Center, then LESSEE may delay its opening date and rental commencement date until the first of LESSEE'S scheduled store opening seasons after all of said major anchor tenants are open for business. LESSEE shall also have

the option to cancel this lease, however, in such event, LESSOR shall have nine (9) months after such major anchor tenant vacates or ceases operations in said space for said space to be occupied by another tenant open for business and operating a similar type and size business as that of such vacating tenant before LESSEE may exercise this option to cancel, and provided that LESSEE notifies LESSOR of its intent to cancel in writing thirty (30) days prior to such cancellation. During the period of such major anchor tenant's vacancy, LESSEE may abate fixed monthly rent and pay LESSOR percentage rent only equal to four percent (4%) of gross retail sales made from the Premises within thirty (30) days after the end of each month, but in no event more than the fixed monthly rent as set forth in Article 3.

When Hobby Lobby vacated its space in April 1999, Cato commenced paying the percentage rent of four percent of sales rather than fixed rent.

In September 1999, Mardel occupied the entire space previously leased to Hobby Lobby and commenced its business of retail sales of goods to the public. Contending that Mardel was not a "similar type" business as Hobby Lobby under paragraph 26, Cato refused to commence paying the fixed rent, but instead continued to pay the percentage rent. When Hartford and Cato were unable to agree as to whether Mardel was a "similar type" business as Hobby Lobby according to paragraph 26 of the lease, Hartford filed suit.

By its trial pleading, contending that Mardel constituted a "similar type" business as Hobby Lobby, Hartford sought to recover the fixed rentals due under the lease, less the amount of the percentage rentals paid. Upon hearing motions for summary judgment of Hartford and Cato, the trial court denied Cato's motion. Concluding that the issue for determination was whether "Mardel Christian Book Store" is a similar type of business as

3

Hobby Lobby under the lease, the trial court granted Hartford's motion in part. As material here, by its order, the trial court found the following facts to be undisputed:

- the term of the lease was renewed and extended beyond its initial term;

- paragraph 26 of the lease is known as an "inducement clause";

- Cato almost always puts an "inducement clause" in its lease agreements;

- Stein Mart, Hobby Lobby, and T.J. Maxx were "inducement tenants" under lease paragraph 26;

- the purpose of "inducement tenants" is to ensure a certain quantity and type of customer traffic at a shopping center for smaller tenants such as Cato;

- inducement tenants are always retail establishments; and

- both Mardel Christian Book Store and Hobby Lobby are retail stores selling goods to the public.

Neither party challenges the above findings of the trial court. Regarding the charge of the court, question one asked and instructed the jury:

Do you find from a preponderance of the evidence that Mardel Christian Book Store operates a similar type business as Hobby Lobby Craft Supply Store?

Answer "We Do" or "We Do Not"

If you have answered "We Do" to Question 1, then answer Questions 2 and 3. If you have answered "We Do Not," then answer Question 4.

4

After answering the question "We Do Not" as instructed, the jury answered question 4 denying Cato any recovery for attorney's fees.

The trial court also submitted eight special instructions in its charge. Instruction 2 instructed the jury that:

> 2. You will answer "We Do" or "We Do Not" to all questions unless otherwise instructed. A "We Do" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "We Do" answer, then answer "We Do Not." Whenever a question requires an answer other than a "We Do" or "We Do Not", your answer must be based on a preponderance of the evidence. The burden to establish a preponderance of the evidence is on the Plaintiff.

Instructions 3 and 4 were as follows:

> 3. A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the word spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.
>
> 4. You will not take into consideration nor discuss any matter not produced in evidence before you, other than matters of common knowledge.

The charge did not define the term ""similar type business" and Hartford does not assign any error to the charge or the instructions. Following rendition of the judgment, Hartford presented a motion for judgment notwithstanding the verdict and a motion for new trial which was overruled by operation of law.

5

By its first issue, Hartford contends the trial court erred in overruling its objection to questions by Cato's counsel to a witness regarding prospective jurors' responses to questions on *voir dire*. We disagree. During *voir dire*, counsel for Cato asked the prospective jurors several questions regarding whether they had shopped at Hobby Lobby or Mardel. Then, on direct examination of Cato's representative, counsel asked the witness how many female panel members indicated that they shopped at Hobby Lobby and Mardel's. Then, as counsel for Cato continued

> Q. Do you remember when I asked –
>
>> Mr. Golman: Your Honor, I object to the relevance of this line of questioning.
>>
>> The Court: Overruled.
>
> Q. Do you remember when I asked the question how many women panel members shopped at Hobby Lobby?
>
> Q. If I told you that twelve females raised their hands, would that be correct."
>
> A. I noticed that also.

Then, without any additional objection, the examination concluded:

> Q. And if I told you that five women raised their hand to that question, would that be correct?
>
> A. That is correct. I saw more women raise their hands when you asked about the Hobby Lobby, and not nearly as many women raised their hand when asked about Mardel. It was–it was interesting.

In order to preserve its complaint for appellate review, Hartford was required to present a timely objection to the trial court stating the specific grounds for the objection. Tex. R. App. P. 33.1(a). Moreover, a party cannot raise an objection to evidence for the first time on appeal which was not presented to the trial court. Prati v. New Prime, Inc., 949 S.W.2d 552, 554 (Tex.App.--Amarillo 1997, pet. denied). Although Hartford's objection was directed to the "relevance of the line of questioning," on appeal Hartford does not present its relevance objection, but instead argues that the examination was prohibited by Rule 606 of the Texas Rules of Evidence, and that Texas law does not permit a verdict to be rendered on the personal experiences of members of the jury. Because these issues were not presented to the trial court, we cannot consider them for the first time on appeal. *Id.* Issue one is overruled.

By its second issue, Hartford questions whether there was "legally sufficient evidence, or alternatively factually insufficient evidence, to support the jury's finding that Mardel and Hobby Lobby do not operate similar businesses." We disagree. Before we commence our review of the evidence, we must first determine the appropriate legal challenge because the charge of the trial court placed the burden of proof on Hartford, and instructed the jury to find "We Do Not" if Hartford did not satisfy its burden. The appropriate challenge to a jury finding on a question upon which the complaining party does not have the burden of proof is either an insufficient evidence point or a no evidence point. But where, as here, Hartford had the burden of proof, the appropriate challenge is either a great weight and preponderance point or a matter of law point. Raw Hide Oil &

7

Gas v. Maxus, 766 S.W.2d 264, 275-76 (Tex.App.--Amarillo 1988, writ denied). Because Hartford had the burden of proof on the question, we will consider the inappropriately designed point by first determining whether the jury finding was inappropriate as a matter of law or whether such finding is against the great weight and preponderance of the evidence, in accordance with the standard of review we applied in *Raw Hide Oil*.

We commence our review of the evidence by considering the relevant documentary evidence. Under paragraph 11 of the lease, Cato's use of its space was limited to the retail sale of ladies' and girls' apparel, accessories, and allied lines. In addition, by paragraph 28, Hartford agreed that if it leased space to any national or regional women's apparel chain specializing in large sized women's apparel then the fixed monthly rental of Cato would be reduced by one half. Finally, paragraph 25 prohibited future leases of space for a pet shop, game room, disco, night club, amusement arcade, theatre, health spa, bowling alley, or any other non-retail operation or a store featuring sexually explicit materials or products, or drug paraphernalia. These three provisions demonstrate that the parties placed considerable significance on the types of businesses which would be allowed to lease space and indicate that Cato and Hartford were very concerned about the types of businesses to be operated by the neighboring tenants. Also, the letter of T.J. Maxx, an inducement tenant, to Hartford dated September 22, 1998, indicated its opinion that Mardel would not be an acceptable inducement tenant in lieu of Hobby Lobby. Considering this documentary evidence and the instruction of the trial court to the jury that they could

8

consider direct as well as circumstantial evidence and matters of common knowledge, the matter of law point is overruled.

Next, in reviewing the great weight and preponderance point, we examine the entire record to determine if there is some evidence to support the finding, and then determine whether, in light of the entire record, the finding is manifestly unjust. Traylor v. Gouldling, 497 S.W.2d 944, 945 (Tex. 1973); *Raw Hide Oil*, 766 S.W.2d at 276. Initially, we focus on the court's charge to the jury because it did not define the terms "common knowledge" or "similar type of business." We also note the findings of the trial court which are unchallenged that (1) Stein Mart, Hobby Lobby, and T. J. Maxx were "inducement" tenants; (2) the purpose of an inducement tenant is to ensure a certain quality and type of customer traffic at a shopping center for smaller tenants such as Cato; (3) inducement tenants are always retail establishments; and (4) both Mardel Christian Book Store and Hobby Lobby are retail stores selling goods to the public.

The representative for Hartford testified that he based his opinion that Mardel operated a similar type of business as Hobby Lobby on the fact that both stores sell goods to the public at retail and that some of the merchandise in both stores is similar; however, according to the letter from the T.J. Maxx representative, Mardel sells religious merchandise, but we note that as its name implies, Hobby Lobby is a craft supply store. The Hartford representative also testified that a restaurant or a stock broker would not be similar to Hobby Lobby. Cato's representative described Hobby Lobby as a well known

9

retailer with close to a billion dollars in sales each year that operates 247 stores and that 61 of its stores are located in Texas. In contrast, he testified that Mardel was only a 16-store chain and that he preferred to have Hobby Lobby as an inducement tenant. Applying the appropriate standard of review, we conclude there is some evidence to support the finding and in light of the entire record, the finding of the jury that for purposes of the provisions of the lease, Mardel Christian Book Store does not operate a similar type business as Hobby Lobby Craft Supply Store. Hartford's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.